UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

WILLIE CURTIS,

    Plaintiff,      Case No. 2:22-cv-114

v.             Honorable Maarten Vermaat

TIMOTHY STALLMAN,

    Defendant.
_____/

## **OPINION**

  This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 6.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

  This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

  "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Prison Doctor Timothy Stallman.

Plaintiff alleges that on July 8, 2020, he had an appointment with Defendant and reported that all his issues over the past eight years were the result of a widespread, untreated Herpes Simplex Virus (HSV). Plaintiff stated that he had an HSV diagnosis in his medical record as of

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

September 22, 2016. Plaintiff explained that his HSV caused him to develop Mollaret's Meningitis, which resulted in Plaintiff suffering from headaches and shooting pains in his body every day for the past eight years. Plaintiff also stated that for the past two years he has suffered from hallucinations and periodic blindness. Plaintiff asked Defendant for a spinal tap test to check for Mollaret's Meningitis. As an alternative, Plaintiff sought to be treated with an antiviral medication to see if it resolved Plaintiff's symptoms. Following the appointment, Plaintiff mailed Defendant a copy of his September 22, 2016, diagnosis. However, Defendant disregarded this information and refused to address Plaintiff's medical needs.

Plaintiff asserts a violation of his Eighth Amendment rights. Plaintiff seeks damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff asserts that Defendant denied his necessary medical care in violation of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867

(6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

7

As noted above, Plaintiff asserts that he has a HSV infection, and that Defendant improperly denied his request for a spinal tap test to check for Mollaret's Meningitis and/or his request to be treated with an antiviral medication to see if it resolved Plaintiff's symptoms. Plaintiff attaches a copy of the clinical encounter note dated July 8, 2020, to his complaint. (ECF No. 1-15, PageID.41–43.) The notes shows that Plaintiff was complaining about longstanding daily headaches, daily nausea, dizziness, and muscle spasms. Plaintiff also complained of recent problems with vision, including temporary blindness in the right eye that lasted about "a split second or two." (*Id.*, PageID.41.) Plaintiff states that he recently quit exercising because of his symptoms and that he hears voices in his head and has vivid dreams. (*Id.*) Plaintiff was concerned that he had a slow viral infection of the brain related to herpes and that he had previously had shingles and chicken pox. (*Id.*)

Defendant conducted an examination and noted that Plaintiff's physical condition appeared to be normal, his cranial nerves were intact grossly, his pupils were equal, round, and reactive to light, and he was oriented to time, place, and person. Defendant indicated that he educated Plaintiff and that Plaintiff was to receive follow-up at the Chronic Care Clinic (CCC) as needed. Defendant stated:

> Symptoms present x 8 years, labs unremarkable, vitals stable, consider an esoteric issue, though without any objective findings no direction to pursue. Patient researching Mollaret meningitis. Follow up at patient CCC appointment or sooner should symptoms change. [Mollaret's meningitis is characterized by chronic, recurrent episodes of headache, stiff neck, meningismus, and fever, cerebrospinal fluid (CSF) pleocytosis with large "endotheilial" cells, neutrophil granulocytes, and lymphocytes; and attacks separated by symptom-free periods of weeks to years; and spontaneous remission of symptoms and signs]

(ECF No. 1-16, PageID.43.) Defendant gave Plaintiff counseling related to access to care, and Plaintiff verbalized understanding. (*Id.*) It is clear from Defendant's notes regarding this visit that

8

although Plaintiff believed he had Mollaret's meningitis, Defendant did not observe any symptoms or note any test results in support of this diagnosis.

Plaintiff states that he sent a copy of a medical note dated September 22, 2016, to Defendant as support for his request for a spinal tap and/or to be treated with an antiviral and attaches a copy of this note to his complaint. (ECF No. 1-11.) The note indicates that Plaintiff presented with blistering lesions on his penis, which popped and dried since appearing five days prior. (*Id.*) Under assessment/plan, the medical provider listed Herpes simplex as a diagnosis. (ECF No. 1-12.) The provider noted that Plaintiff had requested further testing and treatment, but that there was a lack of indication for either testing or treatment. (*Id.*) Plaintiff asserts that Defendant's receipt of this note should have placed him on notice of Plaintiff's need for further testing and/or treatment. Nothing in this note supports Plaintiff's assertion that he has Mollaret's meningitis.

Plaintiff also attaches a copy of the step III grievance response by S. Smoyer, RN, which indicates that all relevant information within the electronic medical record had been reviewed and that no violation of policy had been identified. (ECF No. 1-17.) Nurse Smoyer also stated that the medical provider was responsible for managing the treatment plan and that Plaintiff's disagreement with the plan did not constitute a denial of care. (*Id.*)

The Court notes that the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x

720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

It is clear from Plaintiff's exhibits that Defendant Stallman assessed his symptoms and history and concluded that Plaintiff's assertion that he had Mollaret's meningitis or some other condition which required a spinal tap or antiviral treatment was unsupported by Plaintiff's symptoms and test results. Moreover, even if Plaintiff was correct about his condition, "the right to adequate medical care does not encompass the right to be diagnosed correctly[.]" *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944–45 (6th Cir. 2010) (finding that the doctor's initial incorrect diagnosis of severe constipation, even "in light of [the prisoner's] substantial weight loss and sharp stomach pain[,]" amounted only to negligence given the prisoner also complained of his "inability to have a bowel movement for several days and other stomach pains, which could have been consistent with [the doctor's] diagnosis"). Because Plaintiff has failed to allege facts showing that Defendant was deliberately indifferent to a serious medical need, his Eighth Amendment claim is properly dismissed.

### III. Plaintiff's Motion for Preliminary Injunction

Plaintiff has filed a motion for preliminary injunction seeking a "spinal-tap-test" to check him for Mollaret's Meningitis and to order a CAT scan to check for brain damage if Plaintiff has

Mollaret's Meningitis. (ECF No. 4.) Initially the Court notes that because Plaintiff has failed to state a claim for relief in this case, his motion is properly denied as moot.

Moreover, a careful review of the record in this case fails to support Plaintiff's claim for preliminary relief. Preliminary injunctions are "'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the

11

prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits. *Benisek v. Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1943–44 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. As stated above, Plaintiff has failed to state a claim for relief in this case.

In addition, the interests of identifiable third parties and the public at large weigh against an injunction. Plaintiff seeks an order requiring that he receive specific diagnostic testing. In the absence of a likely constitutional violation, the district court correctly recognized that separation of powers and federalism strongly discourage the federal courts from entangling themselves in the administration of state prison health care systems. *See, e.g.*, *Turner v. Safley*, 482 U.S. 78, 84–85 (1987); *Bell v. Wolfish*, 441 U.S. 520, 544 (1979); *Preiser v. Rodriguez,* 411 U.S. 475, 491–92 (1973). Accordingly, because Plaintiff's complaint fails to state a claim for relief, his motion for preliminary injunctive relief will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also deny Plaintiff's motion for a preliminary injunction. (ECF No. 4.)

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated: September 23, 2022  /s/ *Maarten Vermaat*
  Maarten Vermaat
  United States Magistrate Judge